We do not retain jurisdiction.

CONSOLIDATED PRECAST, INC., PLAINTIFF-RESPONDENT, v. ACTION BUILDERS CO., INC., COMMERCIAL CENTRE ASSO-CIATES, LTD., LAN ASSOCIATES III, AND IRVING TRUST COMPANY, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 23, 1983—Decided June 22, 1983.

Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.

*Victor A. Deutch* argued the cause for appellants Commercial Centre Associates, Ltd. and Lan Associates III (*Ravin, Davis & Sweet,* attorneys; *Jay J. Rice* on the brief).

*Richard L. Abramson* argued the cause for respondent (*Peckar & Abramson,* attorneys).

The opinion of the court was delivered by

BISCHOFF, P.J.A.D.

This appeal raises issues relating to the stop notice provisions of the Mechanics' Lien Law, *N.J.S.A.* 2A:44–75. The facts are essentially undisputed.

Defendant Lan Associates III ("Lan") is a Connecticut limited partnership formed for the purpose of exercising an option to purchase land on which certain buildings were to be erected. It presently owns one of the completed buildings. On October 10, 1978 Lan entered into a contract with defendant Action Builders Co., Inc. ("Action") for construction of "Commercial Centre Offices." Lan was identified in the contract as the owner and Action as the contractor.

Action is a Connecticut corporation, with offices at the same address as Lan. It was incorporated for the purpose of constructing Parkway Towers Buildings A & B on the land in question.

On December 8, 1978 plaintiff Consolidated Precast, Inc. entered into a subcontract with Action wherein plaintiff agreed to fabricate and erect architectural precast concrete panels for use in the construction of Parkway Towers Building A for the consideration of $229,400. The contract called for completion of the work by plaintiff by August 31, 1979.

On December 29, 1978 Lan acquired title to the property in question by deed recorded January 8, 1979, and the same day the Lan/Action contract was filed pursuant to *N.J.S.A.* 2A:44–75. The contract was filed prior to plaintiff performing any work or furnishing any materials for the job.

Lan conveyed the property a few weeks later to defendant Commercial Centre Associates, Ltd. ("Commercial") by deed dated February 14, 1979 and recorded March 6, 1979. Also on

February 14, 1979, Commercial, as owner, and Lan, as contractor, entered into a contract for Lan to build two office buildings on the land in question for a consideration of $6,402,803.

Work by plaintiff on the project proceeded and was completed. Plaintiff was paid part of the contract price, but a balance remained in dispute. Because it had not been paid, plaintiff filed a stop notice with the Middlesex County Clerk dated March 4, 1980 and filed March 7, 1980. The stop notice was addressed to Commercial and/or Lan as owner and gave notice that Action was indebted to plaintiff in the sum of $116,648.61 for services performed in the construction of Parkway Towers Building A and demanded that the owner retain said sum out of the monies due Action. Copies of the stop notice were served upon Commercial and Lan.

At the time plaintiff filed the stop notice the Lan/Action contract was the only construction contract of record. This contract was discharged of record by Lan on April 17, 1980. Thereafter, on June 9, 1980 the contract between Commercial, as owner, and Lan, as contractor, was recorded.

Plaintiff filed a complaint seeking to enforce its lien claim against Lan and Commercial. The amount of the claim and Action's liability therefor are not in dispute. After filing and service of the stop notice, proofs disclosed Commercial paid Lan and Lan paid Action $410,000, a sum in excess of plaintiff's claim.

Plaintiff alleged that Lan and Commercial were not separate entities but actually "alter egos of each other"; that the partners of Lan and Action are also identical and not separate entities but alter egos of each other. Plaintiff further alleged that because of the relationship noted, that is, the owner and general contractor being one and the same, it is clear they have no intention of complying with the stop notice provisions of N.J.S.A. 2A:44–78 and –84 and by inaction seek to deprive plaintiff of its rights.

Defendant contended that the stop notice was ineffective and invalid since the statute permits the filing of a stop notice when a "written contract signed by the record owner" of the land is on file. *N.J.S.A.* 2A:44–75. Defendant argues that when the stop notice was filed the only contract on file was one signed by Lan who was not then the record owner and that plaintiff knew the identity of the record owner since it had addressed the stop notice to Commercial which was not a party to the signed, filed contract.

The trial judge ruled that the stop notice filed by plaintiff was a valid stop notice entitling plaintiff to the statutory protection against Lan and/or Commercial and it could not be avoided by defendants' device of a "paper change in ownership" or by the discharge of the Lan/Action contract. She held that the evidence raised a substantial inference that (1) Lan and Commercial were one and the same and the change in ownership was of little significance, and (2) Action was part of the arrangement and Lan and Action operated as owner/contractor.

She further held that while the evidence might not be sufficient to warrant a "piercing of the corporate veil" to reach stockholders and/or directors, the facts warranted a disregard of the technical requirements of ownership relied upon by defendant under *N.J.S.A.* 2A:44–75 because the law assumes that the owner and contractor have "dissimilar and opposing interests," which was not the case here. And finally, she held that the burden was on Lan as the owner to discharge the first contract if the second contract, in fact, had been entered into prior to the filing of the stop notice so that plaintiff would have notice of the change in record ownership and change in the filed contract in order to comply with the strict statutory requirements which defendant argues plaintiff did not utilize.

Judgment was entered in favor of plaintiff for the full amount of the claim, plus interest and against defendants Lan, Commercial and Action.

We affirm the judgment entered in the Law Division of the Superior Court substantially for the reasons expressed by the trial judge in her letter opinion dated May 11, 1982. We add the following comments.

If we were to accept defendants' argument and limit our consideration of the relevant documents to the facts appearing thereon, plaintiff would be denied all protection under the Mechanics' Lien Law. That act provides two methods by which those who have provided, or are about to provide, labor and materials may secure protection for the payment of their charges. The first method is by filing a mechanics' notice of intention pursuant to *N.J.S.A.* 2A:44–71 and –72, which initiates the process for securing lien rights on property on which labor has been performed or materials furnished. This method is not available where the owner/contractor construction contract has been filed pursuant to *N.J.S.A.* 2A:44–75 and is not applicable with respect to "any labor performed or materials furnished prior to the filing . . . of a mechanics' notice of intention to perform such labor or furnish such material."

The second method is by filing a stop notice pursuant to *N.J.S.A.* 2A:44–77. This protection is only available if the "record owner" has filed a construction contract pursuant to *N.J.S.A.* 2A:44–75 before the work is performed or the materials furnished. When the record owner does file such a contract, the only lien which may be imposed on the land and premises on which the labor has been performed or the materials furnished is that of the general contractor. *N.J.S.A.* 2A:44–75. If a subcontractor seeks protection from the owner for his charges, his only right is to file a stop notice pursuant to *N.J.S.A.* 2A:44–77.

Here an examination of the relevant documents reveals the following. Lan acquired record title to the lands in question on December 29, 1978 by deed recorded January 8, 1979. The Lan/Action construction contract was filed that same day. Plaintiff's lien rights were limited by that filed contract, under the statute, to the filing of a stop notice. After dispute over

payment arose plaintiff did file a stop notice on March 7, 1980, but defendants argue that plaintiff acquired no rights under the stop notice because on February 14, 1979, five weeks after the recording of the deed to Lan, Lan conveyed the lands to Commercial and the deed was recorded March 6, 1979.

The Lan/Action construction contract remained on file uncancelled and plaintiff's subcontract with Action also remained on file. When plaintiff sought to avail itself of the stop notice procedure defendants contended that the contract on file was not with the "record owner" and that plaintiff's stop notice was ineffective. Plaintiff was faced with a dilemma. It could not file a notice of intention prior to performing work or furnishing materials since the Lan/Action contract was on file and it could not later file a mechanics' notice of intention since the work was completed but not paid for and a mechanics' notice of intention must be filed prior to the performance of any work. *N.J.S.A.* 2A:44–71. Nor could plaintiff file a stop notice under the later-filed Commercial/Lan construction contract because *N.J. S.A.* 2A:44–75 limits the protection afforded by a filed contract to a contract filed "before the labor is performed or the materials furnished."

Plaintiff was prevented from literal compliance with the statutes enacted for its protection by defendants' paper transfers, their delays in recording deeds and filing contracts, and in leaving on file a contract purporting to be executed by the record owner when later conveyances as well as undisclosed and unfiled contracts rendered the filed contract ineffective under the statute.

The trial judge quite properly examined the relevant documents and applied equitable considerations to provide plaintiff with the protection the statute was intended to furnish. Paper transfers reminiscent of "the old shell game" should not be permitted to nullify the statutory protection afforded a subcontractor who, in good faith, attempts to comply with the statuto-

ry prerequisites. Constant reexamination of the records in the county clerk's office should not be required of a subcontractor.

Affirmed.